### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD I. CHORCHES, | ) | |
| Chapter 7 Trustee for the Estate of | ) | |
| Scott Cable Communications, Inc., | ) | |
| Plaintiff, | ) | Misc. Case No. 11-00105 (KJC) |
| | ) | (D.I. 3) |
| v. | ) | |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION, | ) | Misc. Case. No. 11-00106 (KJC) |
| Successor to State Street Bank & Trust Co. | ) | (D.I. 4) |
| As Indenture Trustee for the | ) | |
| Junior Subordinated Secured PIK Notes, | ) | |
| Defendant | ) | |

### MEMORANDUM[1]

### BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

The above-captioned miscellaneous proceedings arise from matters transferred to this Court by consent orders from the United States Bankruptcy Court for the District of Connecticut (the "Connecticut Bankruptcy Court"). Before me for consideration is the motion filed in both miscellaneous proceedings by U.S. Bank National Association, as successor in interest to State Street Bank and Trust Company as indenture trustee ("US Bank") seeking (1) to strike the claim objection filed by Ronald I. Chorches (the "Trustee") to the secured claim filed by US Bank (the "Motion to Strike"); and (2) to dismiss the adversary complaint filed by the Trustee to avoid the transfer of the lien securing the claim filed by US Bank (the "Motion to Dismiss")[2]

---

[1] This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052.

[2] The Trustee filed the Motion to Strike and Motion to Dismiss as D.I. 3 in Misc. Case No. 11-00105 and as D.I. 4 in Misc. Case No. 11-00106.

**BACKGROUND**

1. The 1996 Bankruptcy Case

On February 14, 1996, Scott Cable Communications, Inc. ("Scott Cable") and other related companies filed voluntary chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware (the "1996 Bankruptcy Case").  Scott Cable obtained confirmation of a chapter 11 plan in the 1996 Bankruptcy Case.  Under the terms of the confirmed plan, unsecured bondholders holding claims resulting from a leveraged buyout of the Debtor in 1988, and worth approximately $18 million, were converted to Junior Subordinated Secured PIK Notes (the "Junior PIK Notes"), with an approximate face value of $39 million to reflect the original $18 million investment and unpaid interest.  An Order approving a Motion for Entry of a Final Decree in the 1996 Bankruptcy Case was entered on July 31, 1998.

2. The 1998 Bankruptcy Case

On October 1, 1998, Scott Cable (the "Debtor") commenced a second bankruptcy case (the "1998 Bankruptcy Case") by filing a voluntary chapter 11 petition in the Connecticut Bankruptcy Court.  The 1998 Bankruptcy Case included a prepackaged liquidation plan and contemplated a sale of substantially all of the Debtor's assets.  On November 17, 1998, US Bank filed a secured proof of claim on behalf of the holders of the Junior Subordinated Secured PIK Notes (the "Junior PIK Noteholders") in the 1998 Bankruptcy Case, asserting a secured claim in the amount of $51,280,020.00.[3]

---

[3] US Bank filed amended secured proofs of claim on behalf of the Junior PIK Noteholders on November 18, 1998 and July 14, 2009, and a separate secured proof of claim in favor of the indenture trustee for attorney fees on July 14, 2009 (collectively, the "Proof of Claim").

On December 11, 1998, the Connecticut Bankruptcy Court denied confirmation of the prepackaged liquidation plan after determining that (i) the capital gains tax owing to the Internal Revenue Service as a result of the proposed sale (which was scheduled to occur post-confirmation) was an administrative expense claim; and (ii) that the principal purpose of the prepackaged plan was to avoid payment of taxes. *See In re Scott Cable Communications, Inc.,* 227 B.R. 596 (Bankr.D.Conn. 1998).

After failing to obtain confirmation of its plan, the Debtor moved to sell substantially all of its assets to Interlink Communications LLP ("Interlink") pursuant to Bankruptcy Code §363. The Connecticut Bankruptcy Court approved the motion and directed that certain sale proceeds be placed in escrow pending resolution of litigation (described below) regarding those funds. The Debtor closed the sale with Interlink in 1999.

3.  The IRS Litigation

On November 19, 1998, the United States of America, on behalf of the Internal Revenue Service (the "IRS"), filed an adversary proceeding captioned United States of America v. State Street Bank and Trust Co., as Trustee for Junior Subordinated Secured PIK Notes, *et al.* in the Connecticut Bankruptcy Court (the "IRS Litigation") seeking to recharacterize the Junior PIK Notes as equity.  On December 17, 1998, the IRS filed an amended complaint adding a claim for equitable subordination of the claims of the Junior PIK Noteholders to the IRS's claim for payment of taxes relating to the sale of the Debtor's assets.

The Connecticut Bankruptcy Court transferred the IRS Litigation to the Delaware Bankruptcy Court, docketed as adversary proceeding number 01-04605.[4]   After years of

---

[4] Reference to docket items in Adversary Proceeding No. 01-4605 are designated as "Adv. D.I. __" herein.

discovery and pretrial motions, the trial began in November 2006 and ended in June 2007.  In the middle of the trial, the IRS sought to amend its Complaint to bring a derivative action on behalf of the Debtor to avoid the lien granted to secure the Junior PIK Notes as a fraudulent conveyance.  (Adv. D.I. 545).  I denied the motion, primarily because I determined that the claim provided no benefit to the estate or to the IRS.[5]

After the trial, the parties filed various post-trial motions and submitted proposed findings of fact and conclusions of law.  One post-trial motion filed by the IRS sought to amend the pleadings to conform to the evidence and assert a fraudulent conveyance claim in its own right (Adv. D.I. 840).  This Motion was denied.  (Adv. D.I. 915).   The IRS Litigation is the subject of an Opinion and Order issued simultaneously with this Memorandum and Order.

4.  The Chapter 7 Trustee Motion and Adversary Proceeding

On March 9, 2009, the Connecticut Bankruptcy Court converted the 1998 Bankruptcy Case to chapter 7 and appointed Ronald I. Chorches as chapter 7 trustee.  The Trustee filed a motion to substitute himself in the IRS Litigation in place of the Debtor, to realign himself as a plaintiff, to supplement the record, and to amend the Complaint to assert a fraudulent conveyance claim. (Adv. D.I. 839).   The Trustee's motion was granted, in part, to allow the Trustee to be realigned as a plaintiff in the IRS Litigation, and to admit certain documents. However, the Trustee's request to amend the complaint to assert a fraudulent conveyance claim was denied.  (Adv. D.I. 911).

---

[5] Tr. 2/12/07 at 217-18, Adv. D.I. 767. ("[T]he primary reason to deny this relief rests with my conclusion that there either is no benefit to the estate or there is not enough benefit to the estate . . . [a]lmost all, if not all, of what the Government wants to argue under the rubric of fraudulent conveyance has or can or will be argued based on the record that's being made in connection with its equitable subordination and recharacterization claims.  Adding this claim adds nothing, it seems to me, either for the IRS or for the estate.")

On June 8, 2009, the Trustee filed an Objection to the Proof of Claim filed by State Street Bank and Trust Company, as Trustee for the Junior Subordinated PIK Notes (the "Claim Objection") in the Connecticut Bankruptcy Court. On June 25, 2009, US Bank filed a motion to strike the Claim Objection (the "Motion to Strike"), arguing, among other things, that the relief sought in the Trustee's Claim Objection required a determination of the validity, priority and extent of a lien and, pursuant to Bankruptcy Rule 7001, that such relief must be sought by adversary proceeding. On July 15, 2009, the Trustee filed a Response to US Bank's Motion to Strike, and, on July 17, 2009, the United States also filed an objection to US Bank's Motion to Strike. The Trustee filed a Second Amended Claim Objection on November 5, 2009 (the "Amended Claim Objection").

On March 8, 2011, the Connecticut Bankruptcy Court approved an Agreed Order among the Trustee, US Bank and the IRS to transfer the Claim Objection, Amended Claim Objection, Motion to Strike and related pleadings (the "Claim Objection Proceeding") to this Court for disposition. The Claim Objection Proceeding was docketed as Miscellaneous Proceeding 11-00105 in the Delaware Bankruptcy Court on March 16, 2011.

On March 29, 2011, without conceding the necessity of an adversary proceeding, the Trustee filed an adversary complaint by virtue of 11 U.S.C. §544(b), asserting that the Debtor's granting of a lien to secure the Junior PIK Notes was a fraudulent conveyance pursuant to applicable New York state law. The adversary complaint was amended on March 31, 2011 (the "Amended Complaint").

On May 17, 2011, the Connecticut Bankruptcy Court entered a Consent Order to transfer the Amended Complaint to the Delaware Bankruptcy Court. The Amended Complaint was

docketed as Miscellaneous Proceeding 11-00106 in the Delaware Bankruptcy Court on June 2, 2011.

On July 22, 2011, US Bank filed a motion to dismiss the Amended Complaint.  On August 22, 2011, the Trustee filed a brief in opposition to US Bank's Motion to Strike the Claim Objection and US Bank's motion to dismiss the Amended Complaint.  US Bank filed a reply brief on September 9, 2011.

## DISCUSSION

A.    Motion to Strike

This Court has jurisdiction over the Motion to Strike pursuant to 28 U.S.C. §1334(b) and §157(a).  The Motion to Strike is a core matter pursuant to 28 U.S.C. §157(b)(2)(B), and this Court has authority to enter a final order in this matter.

Either by motion or on its own, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed R.Civ.P. 12(f); Fed R.Bankr.P. 7012.  The Trustee voluntarily included his Claim Objection in Count Three of the adversary proceeding.  As a result, his initial Claim Objection became redundant. "A successful motion to strike is one that promotes expediency and efficiency by clearing away pleadings that will not affect litigation." *Hyman v. West Coast Holdings Group, Inc.,* 2013 WL 3514598 (D.N.J. July 11, 2013) citing *Garlanger v. Verbeke,* 223 F.Supp.2d 596, 609 (D.N.J. 2002).  Because the merits of the Claim Objection will be considered as part of the adversary proceeding, I will grant the motion to strike.[6]

---

[6] Because the Trustee's Claim Objection will be considered in the context of the Adversary Proceeding, US Bank's argument that the Claim Objection must be brought by an adversary proceeding pursuant to Fed.R.Bankr.P. 3007(b) and 7001(2) is moot.

B.    Motion to Dismiss

The Amended Complaint contains three counts: (1) avoidance of a fraudulent conveyance pursuant to 11 U.S.C. §544(b) and applicable state law; (2) recovery of an avoided transfer pursuant to 11 U.S.C. §550; and (3) disallowance of US Bank's claim pursuant to 11 U.S.C. §502(d). In the Motion to Dismiss, US Bank argues that the Court should dismiss the Amended Complaint because it is part of a series of attempts, which have already been denied, to interject a fraudulent conveyance claim into the Litigation. I agree.

(1) Jurisdiction and Authority

This Court has jurisdiction over the Motion to Dismiss pursuant to 28 U.S.C. §1334(b) and §157(a). Bankruptcy judges are permitted to hear, determine and enter appropriate orders and judgments on core proceedings.[7] 28 U.S.C. §157(b)(1). Statutorily, the claims asserted in the Motion to Dismiss are core pursuant to 28 U.S.C. §157(b)(1) and (2)(B) and (H). However, recent decisions by the United States Supreme Court determined that Article III of the Constitution does not permit a bankruptcy court to enter a final judgment on certain claims, despite Congress's designation of such claims as "core" in the Bankruptcy Code. *Executive Benefits Ins. Agency v. Arkison,* ___ U.S. ___, 134 S.Ct. 2165, 189 L.Ed.2d 83 (2014), *Stern v.*

---

[7] The Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Act") bifurcated all matters that may be referred to the bankruptcy court into "core" and "non-core" proceedings. *See* 28 U.S.C. §157. The core/non-core designation was implemented in response to the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed. 2d 598 (1982). The *Northern Pipeline* Court "distinguished between cases involving so-called 'public rights,' which may be removed from the jurisdiction of Article III courts, and cases involving 'private rights,' which may not. . . . Specifically the plurality noted the 'the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power must be distinguished from the adjudication of state-created private rights,' which belong in an Article III court." *Executive Benefits Ins. Agency v. Arkison,* ___ U.S. ___, 134 S.Ct. 2165, 2171, 189 L.Ed.2d 83 (2014) quoting *Northern Pipeline*, 458 U.S. at 71-72, and n. 26, 102 S.Ct. 2858.

*Marshall*, 564 U.S. ___, 131 S.Ct. 2594, 180 L.Ed. 2d 475 (2011).[8]  As long as a *Stern* claim is

otherwise related to a case under title 11, the bankruptcy court may hear the claim pursuant to 28

U.S.C. §157(c)(1) and submit proposed findings of fact and conclusions of law to the district

court. *Executive Benefits,* 134 S.Ct. at 2173.  The district court has the constitutional authority to

enter a final order or judgment on *Stern* claims "after considering the bankruptcy judge's

proposed findings of fact and conclusions of law and after reviewing de novo those matters to

which any party has timely and specifically objected."  28 U.S.C. §157(c)(1); *Executive Benefits*,

134 S.Ct. at 2173.

    Although I have jurisdiction to hear this matter, I must also determine whether I have

authority to enter a final order determining the Motion to Dismiss.  The crux of the Trustee's

adversary complaint alleges that the Debtor's granting of a security interest to holders of the

Junior PIK Notes is an avoidable fraudulent conveyance.  In the decision by the Court of

Appeals for the Ninth Circuit in *Executive Benefits,* the Ninth Circuit held that the state law

fraudulent transfer claim pursued by the trustee against a non-creditor was a *Stern* claim.

*Executive Benefits Ins. Agency v. Arkison (Matter of Bellingham Ins. Agency, Inc.),* 702 F.3d

553, 562 (9th Cir. 2012).  The Supreme Court did not disturb this conclusion. *Executive Benefits,*

134 S.Ct. at 2174 ("The Court of Appeals held, and we assume without deciding, that the

fraudulent conveyance claims in this case are *Stern* claims.").

    However, the matter before me involves a fraudulent transfer claim against a creditor

who has filed a proof of claim against the estate *and* the fraudulent conveyance claim is the basis

of the Trustee's objection to that claim in Count Three of the Amended Complaint. The Court of

Appeals for the Sixth Circuit concluded that "the bankruptcy court had constitutional jurisdiction

---

[8]Claims that are designated as "core" in the Bankruptcy Code, but fall outside of the bankruptcy court's
authority to decide by entry of a final order have come to be known as "*Stern* claims."

under *Stern* to adjudicate whether the sale . . . was a fraudulent transfer, because 'it was not

possible . . . to rule on [the] proof of claim without first resolving' the fraudulent-transfer issue."

*Onkyo Europe Electronics GMBH v. Global Technovations, Inc. (In re Global Technovations,

Inc.),* 694 F.3d 705, 722 (6th Cir. 2012) citing *Stern*, 131 S.Ct. at 2616. Here, unlike the

complaining party in *Executive Benefits,* US Bank is a creditor and consideration of the

fraudulent conveyance issue is necessary to resolution of the Trustee's objection to US Bank's

claim.  Therefore, entry of a final order in this matter will not run afoul of *Stern*.[9]

(2) Standard – Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of

Bankruptcy Procedure 7012, governs a motion to dismiss for failure to state a claim upon which

relief can be granted.  "The purpose of a motion to dismiss is to test the sufficiency of a

complaint, not to resolve disputed facts or decide the merits of the case." *Paul v. Intel Corp. (In

re Intel Corp. Microprocessor AntiTrust Litig.)*, 496 F. Supp. 2d 404, 407 (D. Del. 2007) citing

*Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868

(2009) quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S.544, 570, 127 S.Ct. 1955, 167 L.Ed.2d

929 (2007).  The movant carries the burden of demonstrating that dismissal is appropriate. *Intel

Corp.*, 496 F. Supp. 2d at 408.

---

[9] If it is later determined that a final order or judgment by this Court in this matter is not
consistent with Article III of the United States Constitution, then this Memorandum and Order are
submitted as proposed findings of fact and conclusions of law for the District Court to consider in
accordance with the District Court's Amended Standing Order of Reference dated February 29, 2012.

(3)  <u>Discussion</u>

US Bank argues, *inter alia*, that the Trustee's Amended Complaint should be dismissed because it is time barred under section 546(a), which provides:

> (a) An action or proceeding under section 544, 547, 548, or 553 of this title may not be commenced after the earlier of - -
>
> > (1) the later of - -
> >
> > > (A) 2 years after the entry of the order for relief; or
> > >
> > > (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
> >
> > (2) the time the case is closed or dismissed.

11 U.S.C. §546(a).[10]

Based upon the plain language of Section 546(a), the fraudulent conveyance count is unquestionably beyond the statute of limitations and should be dismissed.  Here, the Trustee's Amended Complaint states that the date of the Debtor's bankruptcy filing, which is also the date for the order of relief, was October 1, 1998. (Amended Complaint, ¶6).  The Trustee filed his original complaint on March 29, 2011, more than twelve years after the date of the order of relief.  The Trustee was not appointed within two years of the bankruptcy filing and, therefore,

---

[10] Typically, a defendant is required to plead a statute of limitations defense as part of the answer because it is not one of the enumerated defenses that Rule 12(b) allows to be made by motion.  *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002); Fed.R.Civ.P. 12(b); Fed.R.Bankr.P. 7012.  However, the Third Circuit permits "a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of the claim shows that the cause of action has not been brought within the statute of limitations.'"  *Id.,* 313 F.3d at 135 quoting *Hanna v. U.S. Veterans Admin. Hosp.*, 514 F. 2d 1092, 1094 (3d Cir. 1975).  *See also Ball v. Famiglio*, 726 F.3d 448, 459 n.16 (3d Cir. 2013) ("[W]e have acknowledged that a number of affirmative defenses that are not listed in Rule 12(b) could still be made by motion, provided the basis of the defense was apparent on the face of the complaint.").  Consideration of the statute of limitations is appropriate in this matter.

the Trustee cannot avail himself of §546(a)(1)(B), granting him one year from the date of his appointment to file an action.

Further, because the avoidance claim is dismissed, Count 2, seeking recovery of the avoided transfer pursuant to section 550, must also be dismissed.  Section 550 permits recovery "*to the extent that a transfer is avoided* under section 544, 545, 547, 548, 549, 553(b), or 724(a)" 11 U.S.C. §550(a) (emphasis added).  *Cf. Miller v. Steinberg (In re Marilyn Steinberg Enters., Inc.)*, 141 B.R. 587, 591 (Bankr. E.D. Pa. 1992) (In discussing the avoidance of preferential transfer, the Court noted that "[s]ection 547 identifies those transfers which may be avoided, while section 550 governs recoverability of transfers so avoided.").

What remains of the Trustee's Amended Complaint is his request in Count 3 for disallowance of US Bank's secured claim pursuant to section 502(d).  Generally, §502(a) provides that a properly filed proof of claim will be allowed, unless a party in interest objects. 11 U.S.C. §502(a); Fed.R.Bankr.P. 3001.  Section 502(d), however, is an exception to that general rule of §502(a), and provides that "the court shall disallow any claim of an entity . . . that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property . . . ."  11 U.S.C. § 502(d).  In other words, section "502(d) disallows the claim of a creditor that received a transfer avoidable under chapter 5 of the Bankruptcy Code unless the creditor returns the transfer to the estate."  *In re Asia Global Crossing, Ltd.*, 344 B.R. 247, 251 (Bankr. S.D.N.Y. 2006) (emphasis omitted).

US Bank argues that the time limitations of §546(a) also bar Count 3 of the Amended Complaint because §502(d) relies upon avoidance powers, specifically §544(b).[11]  In response, the Trustee argues that the time limitations of §546(a) do not apply to Count 3 because he is asserting his objection under §502(d) *defensively*.  More specifically, the Trustee is not seeking the affirmative recovery of money or property from US Bank; rather, the Trustee is seeking disallowance of US Bank's claim to prevent payment from assets of the estate.  Courts, however, have split over whether a trustee may bring a §502(d) claim objection if the limitations period of §546(a) would bar an avoidance action.  *Compare El Paso v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.)*, 217 F.3d 1161, 1167-68 (9th Cir. 2000) (concluding that a trustee may seek disallowance of a claim under §502(d), even if the underlying avoidance action would be time-barred by §546(a)); *Comm. Of Unsecured Creditors v. Commodity Credit Corp. (In re KF Dairies, Inc.),* 143 B.R. 734, 737-38 (9th Cir. B.A.P. 1992) (same, except considering the limitations period in §549(d)); and *In re Yatko*, 416 B.R. 193, 201 (Bankr. W.D.N.C. 2008) (noting that case law allows a §502(d) claims block to apply even if the underlying avoidance action would be time-barred by §546) *with Hoggarth v. Kaler (In re Midwest Agri Dev. Corp.)*, 387 B.R. 580, 586 (B.A.P. 8th Cir. 2008) (holding that the court may only disallow a claim under §502(d) if an entity is first adjudged liable under the applicable avoidance section); *and In re Mktg. Assocs. of Am. Inc.*, 122 B.R. 367, 369-70 (Bankr. E.D. Mo. 1991) (holding that a trustee must timely assert an avoidance action before relying on §502(d) to disallow a claim).[12]

---

[11] "[T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title . . . ." 11 U.S.C. § 544(b).

[12] Cases deciding that a trustee may use §502(d) to disallow a claim even after an avoidance action would be time-barred have relied, in part, upon pre-Bankruptcy Code decisions holding that a trustee could raise an otherwise time-barred voidable transfer to disallow a claim under Bankruptcy Act §57g. *See, e.g., Matter of Mid Atlantic Fund, Inc.*, 60 B.R. 604, 610 (Bankr. S.D.N.Y. 1986) citing *In re Meredosia*

Section 502(d) does not limit the time within which a trustee may object to a claim. *See* Fed.R.Bankr.P. 3007. Courts following the view that §502(d) claims may be brought defensively after the applicable statute of limitations for an avoidance action has passed have recognized that the only limit is the equitable doctrine of laches. *Mid Atlantic*, 60 B.R. at 610 citing *Cushman Bakery*, 526 F.2d at 37 ("[A]n unreasonable delay which prejudices the claimant's ability to refute the trustee's objection will constitute laches.").

Even assuming, without deciding, that I agreed with the Trustee and followed the cases holding that his §502(d) claim objection may be brought defensively after the limitation period of §546(a) has passed, and that such cases are applicable to this dispute, I conclude that it is not appropriate to allow the Claim Objection in this case. Although the Trustee did not delay in filing the original Claim Objection after he was appointed, the Trustee's appointment and the filing of the Claim Objection occurred more than twelve years after the allegedly fraudulent conveyance took place, more than nine years after the second bankruptcy filing in October 1998, and more than two years after completion of a multi-day trial (that took place over a period of months), followed by extensive post-trial motions and post-trial briefing, regarding US Bank's claim. The equitable doctrine of laches applies here. US Bank would suffer prejudice if it was forced to defend additional litigation with respect to its claim.

Furthermore, I have already denied the Trustee's request to amend the complaint to assert a fraudulent conveyance claim pursuant to Bankruptcy Code §544(b) and applicable New York law. I have also denied two similar motions by the IRS to assert fraudulent conveyance claims (once as a derivative claim and once as a direct claim).

---

*Harbor & Fleeting Serv., Inc.,* 545 F.2d 583 (7th Cir. 1976), *cert. denied,* 430 U.S. 967, 97 S.Ct. 1649, 52 L.Ed.2d 359 (1977); *In re Cushman Bakery,* 526 F.2d 23 (1st Cir. 1975), *cert. denied,* 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976), *In re Supreme Synthetic Dyers, Inc.,* 3 B.R. 189 (Bankr.E.D.N.Y. 1980); and *In re Hudson Feather & Down Products, Inc.,* 22 B.R. 247 (Bankr.E.D.N.Y. 1982).

There is yet another reason why the Trustee cannot prevail here.  Collateral estoppel, or claim preclusion, applies when (i) the issue previously decided is identical with the one presented in the action in question; (ii) the prior action has been finally adjudicated on the merits; (iii) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication; and (iv) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.  *Troy Corp. v. Schoon,* 959 A.2d 1130, 1133-34 (Del. Ch. 2008).

In the Trustee's §502(d) claim, the Trustee seeks to block payment of US Bank's secured claim based upon a fraudulent conveyance claim under Bankruptcy Code §544 and New York State law.  I have already denied the Trustee's request to pursue such a claim as part of the IRS Litigation. (Adv. D.I.'s 839, 911).  I have also denied two requests by the IRS to pursue such a claim.[13]  Even though the Trustee is asserting the fraudulent conveyance claim defensively, the claim is identical to the fraudulent conveyance claim, the attempted assertion of which I have already denied *three times*.  In every case, the primary purpose of the claim is to benefit the IRS,

---

[13]Although the Trustee was not appointed at the time the IRS brought its motions to pursue fraudulent conveyance claims, the parties are now aligned as co-plaintiffs in the IRS Litigation. The IRS is the primary party who will benefit if the Trustee succeeds in blocking payment of US Bank's claim in this adversary.  One court has recognized that:

> In the context of collateral estoppel, privity does not have a single well-defined meaning.  Rather, privity is an amorphous concept not easy of application . . . and includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and [those who are] co-parties to a prior action.  In addressing privity, courts must carefully analyze whether the party sought to be bound and the party against whom the litigated issue was decided have a relationship that would justify preclusion, and whether preclusion, with its severe consequences, would be fair under the particular circumstances.  Doubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate.

*Buechel v. Bain*, 97 N.Y.2d 295, 304-05,766 N.E.2d 914, 920 (N.Y App. 2001) (internal citations omitted).

which has already had an opportunity to pursue the IRS Litigation to recharacterize or equitably

subordinate US Bank's claim.  I conclude that the prejudice and harm to US Bank if I permitted

the §502(d) claim objection to go forward at this late date far outweighs any harm to the Trustee

and the IRS, who, between them, have had a "full and fair opportunity" to attempt to assert this

claim previously in this vigorously contested litigation marathon.


## CONCLUSION

For the reasons set forth above, the Motion to Strike and the Motion to Dismiss will be

GRANTED.  An appropriate order follows.




BY THE COURT:



_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated:  October 15, 2014